IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LEATHA ANDREWS                                                              PLAINTIFF

                    v.                    Civil No. 08-2116

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                              DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

      Plaintiff, Leatha Andrews, appeals from the decision of the Commissioner of the Social Security

Administration (Commissioner) denying her application for disability insurance benefits (DIB), pursuant to

§§ 216(i) and 223(d) of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d) ("the Act").[1]

      At the time of the administrative hearing, Plaintiff was fifty three years of age and possessed a high

school education.  She performed past relevant work as a medical assembler (plastics).  (Tr. 4).  Plaintiff

alleges a disability onset date of April 20, 2006, due to a history of spina bifida post surgical repair,

lymphedema of the lower extremities bilaterally, peripheral neuropathy causing numbness and frequent falls,

depression, arthritis of the hands, residual shoulder pain post surgery, fecal incontinence, and hourly breaks

to empty her urostomy bag.  (Tr. 4-5, 15, 115).

      Plaintiff filed her DIB application on July 27, 2006.  (Tr. 103-07).  Her application was denied at

the initial and reconsideration levels.  (Tr. 81, 85).  At Plaintiff's request, an administrative hearing was held

---

[1] Plaintiff also filed an application for supplemental security income (SSI) under Title XVI of the Act on July
27, 2006.  (Tr. 74-76).  However, this application is not the subject of the present appeal.

-1-

on May 14, 2008.  (Tr. 3).  The Administrative Law Judge (ALJ) rendered an unfavorable decision on June 12, 2008, finding that Plaintiff was not disabled within the meaning of the Act because she was capable of performing her past relevant work as a medical assembler.  (Tr. 72).  Subsequently, the Appeals Council denied Plaintiff's Request for Review on September 3, 2008, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. 58).  Plaintiff now seeks judicial review of that decision.[2]

**Applicable Law:**

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).[3] "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the

---

[2] In her brief, Plaintiff attached a Notice of Award dated January 17, 2009, finding her disabled as of June 13, 2008.  *See* Pl.'s Br. at 19-26.  For purposes of this appeal, the court will only consider the time period between Plaintiff's initial application for DIB benefits and her subsequent award.  *See Holmstrom v. Massanari*, 270 F.3d 715 (8th Cir. 2001).

[3] In Plaintiff's brief, she argues that Tenth Circuit law is controlling in this case.  *See* Pl.'s Br. at 2.  The court finds this argument to be without merit.  Although a substantial portion of the administrative proceedings took place in Utah, Plaintiff was domiciled in the Western District of Arkansas at the time she filed this appeal, thus making the Western District the proper venue.  *See* 42 U.S.C. § 405(g).  Furthermore, the ALJ applied statutory law and agency regulations, which are uniform throughout the nation.  Since Plaintiff properly filed in the Western District of Arkansas, the court will use Eighth Circuit law.

decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a  medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity (RFC) to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience.  *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is declared not disabled.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**<u>Medical History:</u>**

Plaintiff's medical records reveal multiple health conditions.  She was born on May 6, 1955, with spina bifida.[4]  At two weeks old, Plaintiff underwent surgery to effectively close the spinal opening.  (Tr.

---

[4] Spina bifida is a developmental anomaly characterized by defective closure of the vertebral arch, through which the spinal cord and meninges may protrude. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1677 (29th ed. 2000).

166).  At age seven, Plaintiff had her bladder removed and a urostomy placed.  (Tr. 173).  As a result, Plaintiff requires frequent restroom breaks to empty her urostomy bag.  (Tr. 15).

Additionally, Plaintiff suffers from fecal incontinence post colonoscopy, due to poor muscle tone and sensation.  (Tr. 13, 174).  She has occasional accidents, which sometimes require Plaintiff to bathe herself.  (Tr. 12).  Dr. Michelle Murday, Plaintiff's treating physician, stated that "employment would require an ability for her to get to frequent bathroom breaks, should she have difficulty with incontinence."  (Tr. 172).  At the time of the administrative hearing, Plaintiff claimed she was having about one accident per week.  (Tr. 12).

Plaintiff also has a history of lymphedema[5] of the lower extremities bilaterally and peripheral neuropathy[6], which collectively cause swelling, tingling, and numbness in Plaintiff's lower limbs.  (Tr. 173, 185, 193, 297).  Consequently, Plaintiff has an unusual gait and a history of falls, requiring use of a cane to steady herself.  (Tr. 8, 262, 288).  Plaintiff also wears compression stockings to reduce the swelling in her legs.  (Tr. 6, 177).

**Discussion:**

Plaintiff does not contest the ALJ's findings that: (1) Plaintiff has not engaged in substantial gainful activity since April 20, 2006, the alleged onset date; (2) Plaintiff suffers from lymphedema of the lower extremities bilaterally, fecal incontinence status post colonoscopy, and a history of spina bifida status post

---

[5] Lymphedema is swelling as a result of obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of lymph in the affected region.  PHYSICIANS' DESK REFERENCE MEDICAL DICTIONARY (PDR), 1040 (2nd ed. 2000).

[6] Peripheral neuropathy (polyneuropathy) is a disorder of the peripheral nerves, causing motor and sensory problems.  DORLAND'S, *supra* note 4, at 1422.

-4-

surgical repair, all of which significantly limit her ability to perform basic work activities; and (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, Plaintiff contends that the ALJ erred at step four of the evaluation by: (1) determining that Plaintiff could perform her past relevant work; (2) improperly assessing the opinions of Plaintiff's treating physicians; (3) failing to consider the combined effects of Plaintiff's impairments; and (4) improperly discounting Plaintiff's credibility. *See* Pl.'s Br. at 8-17.

At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

With respect to Plaintiff's RFC, the ALJ found the following:

During the relevant time period, Ms. Andrews had the residual functional capacity to perform the full range of sedentary, unskilled work, except that such work could not require: standing or walking more than 2 hours in an 8-hour workday, with the option to use a cane as needed; sitting more than 6 hours in an 8-hour workday; overhead lifting or reaching of any significance; more then [sic] frequent reaching, handling, or fingering (1/3 to 2/3rds of the day); working around dangerous unprotected heights, machinery or chemicals; working in an area without a restroom nearby for quick access, with two additional bathroom breaks in the morning and two in the afternoon, each lasting five minutes (due to the absence of her bladder and an [sic] ureostomy [sic] bag; and operating

Case 2:08-cv-02116-JRM   Document 10   Filed 12/01/09   Page 6 of 10 PageID #: 67

> foot controls (due to limited feeling in her feet); Finally, she must have the option to elevate both of her legs at chair seat height about 5 minutes per hour to be as comfortable as possible.

(Tr. 69).  Based on this RFC evaluation, the ALJ found that Plaintiff was capable of performing her past relevant work as a medical assembler (plastics) as it was actually performed.[7]  (Tr. 72).

Plaintiff argues that the ALJ, in determining Plaintiff was capable of performing her past relevant work, misconstrued the testimony of the vocational expert (VE) and the treating physician's opinion. Although VE testimony is not required at step four of the analysis, *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001), the regulations provide that an ALJ may elicit testimony from a VE in evaluating a claimant's ability to perform past relevant work.  20 C.F.R. § 404.1560(b)(2); *see Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007).  The ALJ is "free to accept, in whole, in part, or not at all, the VE's opinion at step four so long as the ALJ explains why the VE's opinion is treated the way the ALJ treats it." *Banks*, 258 F.3d at 828.

At the administrative hearing, the ALJ's hypothetical and the VE's corresponding testimony read as follows:

> ALJ:   Now, we're going to give you a hypothetical.  It would be sedentary unskilled but eight hours a day forty hours a week, and she must have the option while seated to elevate her legs on a chair.  She must have the option while on her feet to use a cane for stability.  She could not do any overhead lifting or reaching of any significance, would be limited to frequent reaching, handling, and fingering, could not be working around dangerous unprotected heights, machinery, or chemicals due to the fear of falling, and would have to work in an area with a restroom nearby for quick access, and she would require the maximum restroom breaks allowable, and could not work at any foot controls because she has the limited

---

[7] Plaintiff's past work as a medical assembler of plastics is listed in the DICTIONARY OF OCCUPATIONAL TITLES (DOT) at 712.687-010.  The VE identified this job as light, unskilled work, but as Plaintiff performed the job, it was sedentary, unskilled work.  (Tr. 38).

-6-

feeling in the feet.  So, what would happen to that job of medical assembler as she performed it?  I guess it would be ruled out wouldn't it?

VE:    Well, it would.  It would be ruled out in my opinion.  I guess I need some more clarification.   Would the legs have to be elevated at chair height both legs continuously?

ALJ:    Yes.

VE:    Yeah.  It would be ruled out.

ALJ:    Now, would the job as usually performed in the national economy in reduced numbers be a possibility?

VE:    No.

ALJ:    So, that elevation of the legs at chair seat height both legs continuously that's a problem?

VE:    Yes, it is.

ALJ:    How much elevation would be allowed before you would lose jobs in a medical assembler situation?

VE:    Oh.  I would say that if you would elevate them for, possibly, oh, five minutes per hour that would be about maximum.  It puts too much of a bind on your ability to use your hands in front of you when your legs are elevated.

(Tr. 38-39).  Additionally, the ALJ posed the following question:

ALJ:    Okay.   The problems in the case are not only that, but there is significant neuropathy pain and swelling in the lower extremities causing her to be down way too much to be able to perform full-time work and also ineffective ambulation, having a hard time making transitions, periodic falling requiring another person to assist, and basically that just renders the person ineffective on the job in the range of at least 15 to 20 percent below average because she would have to take time out for these transitions in this recumbency [phonetic].  Would that rule out all work in your opinion?

VE:    Yes it would, Your Honor.

(Tr. 42).  Despite the VE's unambiguous testimony, the ALJ stated in his opinion:

Mr. John F. Hurst, an impartial vocational expert, noted that while this position is generally classified as involving "light" work, she performed it at a "sedentary" level, based upon her testimony and the record.  The ALJ asked Mr. Hurst whether an individual with Ms. Andrews' age, education, work experience, and residual functional capacity would be able to perform such work.  Mr. Hurst testified that given all of these factors, the individual would be able to perform the requirements of that job.

(Tr. 72).

-7-

Upon review of the transcript, the court cannot reconcile the discrepancy between the VE's testimony and the ALJ's opinion. This is not an instance where the ALJ chose to disregard the VE's opinion because it assumed limitations that were not supported by the objective medical evidence. *Banks*, 258 F.3d at 828. To the contrary, the ALJ relied on the VE's testimony in coming to the conclusion that Plaintiff could perform her past relevant work. (Tr. 72). However, the ALJ's determination is directly at odds with the VE's testimony. (Tr. 39-42, 72). Furthermore, the ALJ provided no explanation to account for the departure. Since the ALJ offered no clarification as to why the VE's testimony at the administrative hearing conflicted with his written opinion, we have no alternative but to remand for further proceedings.

Additionally, Plaintiff argues that the ALJ's RFC assessment contradicts the opinion of Ms. Barbara White, a certified lymphedema therapist who treated Plaintiff. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a claimant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). "The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight

afforded to the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).

In a letter of medical necessity dated December 21, 2006, Ms. White diagnosed Plaintiff with bilateral lower extremity lymphedema, stage 2.  (Tr. 177).  Lymphedema is a "permanent condition of the legs, causing pain and/or discomfort and excessive retention of lymphatic fluid and protein, with danger of infection, poor wound healing and excessove [sic] fatigue of the legs."  (Tr. 177).  Ms. White treated Plaintiff with complex decongestive therapy and manual lymphatic drainage.  (Tr. 193).  Her progress notes reveal that fluid reduction was minimal.  (Tr. 193).  To aid in fluid reduction, Ms. White ordered Plaintiff compression stockings.  (Tr. 177).  With respect to long term management of Plaintiff's condition, Ms. White stated:

> Excessive walking and stair climbing must be avoided.  Ms. Andrews must be able to elevate her legs on a foot stool when sitting at a desk, and she must be able to get up and walk for one to two minutes for at least a minimum of one time per hour.  Excessive sitting with the legs in a dependent position (feet on the floor) will greatly exacerbate the condition.

(Tr. 177).

The ALJ's RFC assessment stated that Plaintiff "must have the option to elevate both of her legs at chair seat height about 5 minutes per hour to be as comfortable as possible."  (Tr. 69).  The court fails to understand how elevation of Plaintiff's legs for a total of forty minutes in an eight-hour workday is consistent with Ms White's warning against "excessive sitting."  (Tr. 177).  Furthermore, the ALJ did not provide any explanation as to how he calculated the five minute elevation time.

In discounting Ms. White's opinion, the ALJ reasoned that "there is no evidence in Ms. White's case notes that show that these opinions are based upon limitations specific to Ms. Andrews.  Rather, it appears that Ms. White's warnings are essentially boilerplate language that she would give to all patients

with lymphedema." (Tr. 72). The court disagrees and finds that Ms. White's opinion was tailored to Plaintiff's specific needs. Ms. White's letter of medical necessity specifically refers to Plaintiff's diagnosis, the time during which she was treated, and the type of compression stockings Plaintiff should wear. (Tr. 177). The court can only conclude that the "boilerplate language" the ALJ referred to is the explanation of lymphedema, found in the last paragraph of Mr. White's letter. (Tr. 177). Such an explanation does not nullify the very specific instructions provided earlier in the letter.

Finally, in disregarding Ms. White's opinion, the ALJ emphasized that Ms. White never ruled out Plaintiff's ability to work. (Tr. 71). It is not the duty of a treating physician to render an opinion on a claimant's ability to work. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). Rather, a treating physician offers a medical opinion and it is the Commissioner's duty, after considering all the evidence, to make the ultimate disability determination. *Id.* Here, the court finds that the ALJ, in assessing Plaintiff's RFC, did not give adequate consideration to the medical opinion of Ms. White.

**Conclusion**

Accordingly, the ALJ's decision denying benefits to Plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of his own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Once a proper assessment is completed, the ALJ should also reconsider whether Plaintiff's RFC allows him to engage in substantial gainful employment.

ENTERED this 1st day of December, 2009.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-10-